THE JERSEY CITY AND HOBOKEN HORSE RAILROAD COMPANY, appellants, and THE JERSEY CITY AND BERGEN RAILROAD COMPANY, respondents.

The J. C. and H. Horse Railroad Company, and the J. C. and B. Railroad Company, were authorized by their charter, to build a railroad through certain streets of Jersey City, to the ferry, subject to first obtaining the consent of the common council. By an ordinance, passed December 13th, 1859, the J. C. and B. Company were authorized to lay a single track in certain streets. The 3d section of that ordinance imposed the following condition: "The consent to the said company to lay said track in Montgomery street to Newark avenue, and in Newark avenue to Grove street, and in Grove, Gregory, and York streets, as *stated in the first section,* is upon condition that the J. C. and H. Horse Railroad Company shall have the joint use *for their cars,* of *any track that shall be laid in said streets* by virtue of such consent, and that if any disagreement shall arise between said two companies, as to the expense or manner of laying said tracks, or the use thereof, such disagreement shall be finally adjudicated and settled by the common council." The 9th section provided that the ordinance should go into effect as soon as the J. C. and B. Company should, under their signature and seal, agree that they would apply, at the next session of the legislature, and obtain if possible an amendment to their charter, so that in obtaining the consent of the common council to lay their rails, they should be subject to such conditions as said council by ordinance may have imposed. Such agreement was executed by the Bergen Company, December 14th. They accordingly obtained a supplement to their charter, which was approved March 17th, 1860. The 2d section of that supplement provides: "That the said J. C. and B. Railroad Company, in laying, repairing, and maintaining their rails, and constructing their roads in the streets of Jersey City, shall be subject to such conditions as the common council of said city in *the ordinance granting consent* to lay such rails and construct said road, shall have imposed, or shall impose upon said company." The common council passed an ordinance January 10th, 1860, authorizing the J. C. and H. Company to lay a single track through certain streets. The 3d section of this ordinance provides, that the Hoboken Company shall have the joint use of the tracks of the Bergen Company, so far as may be necessary to run the cars of the Hoboken Company to and from their tracks in certain streets to Hudson street, *upon their agreement* with the Bergen Company, in accordance with section three of their ordinance passed December 13th, 1859. *Held—*

1. That the condition of the 3d section of the Bergen Company's ordinance is, by virtue of their agreement with the Hoboken Company, and of the 2d section of said supplement of 1860, as effectually a part of that sup-

Jersey City and Hoboken Horse R. Co. *v.* Jersey City and Bergen R. Co.

plement as if embodied in terms therein, and binding upon the Bergen Company, and the Hoboken Company is entitled to the joint use of the Bergen Company's track through the streets specified.

2. That right, though vested, cannot be exercised entirely at the expense of the Bergen Company.

3. The provision that, in case of disagreement between the companies as to the expense or manner of laying the tracks, or their use, such disagreement should be finally adjudicated and settled by the common council, was proper and lawful. It became embodied in the act of incorporation, and is a condition on which the franchise is to be enjoyed, and does not depend merely upon the force of an agreement to arbitrate.

4. The termination of the agreement as to the terms of use of tracks through certain streets (pursuant to notice, in accordance with the terms of the agreement) did not affect the *right* of joint use of the Bergen Company's tracks, or entitle the Bergen Company to enjoin the use by the other until a new *agreement could be made, or the common council should* adjudicate the matter.

5. The common council had no power to declare a forfeiture by the Hoboken Company of their right to use the Bergen Company's tracks, for non-payment of the amount adjudicated. That right is vested, and no authority was given to the council to forfeit for non-payment.

6. The words "upon their agreement," &c., in the 3d section of the ordinance of January 10th, 1860, do not qualify the right of the Hoboken Company; that right became fixed by the ordinance of December 13th, 1859.

7. The true intention of the said ordinance of January 10th, 1860, was only to subject the joint use to just such condition as was contained in the 3d section of the Bergen Company's ordinance.

8. The tracks of the Bergen Company subject to the joint use by the Hoboken Company are those only, named in the 3d section of the Bergen Company's ordinance of December 13th, 1859.

The opinion of the Chancellor is reported in 5 *C. E. Green* 62.

*Mr. Gilchrist,* Attorney-General, for appellants.

*Mr. L. Zabriskie* and *Mr. I. W. Scudder,* for respondents.

The opinion of the court was delivered by

BEDLE, J.

This is an appeal from an order of the Chancellor, made on bill, answer, and affidavits, enjoining the appellants from

using certain horse car tracks of the respondents in Jersey City. The tracks in question run from near the Jersey ferry, through Montgomery street and Newark avenue to Jersey avenue, and from the intersection of Grove street with Newark avenue, through Grove and other streets back to Montgomery street, near the ferry. Both of these railroad companies were incorporated in 1859, and each was authorized to build a railroad through the streets of Jersey City to the ferry, subject to first obtaining the consent of the common council. On the 13th day of December, 1859, the common council passed an ordinance (approved by the mayor, December 20th, 1859), authorizing the Jersey City and Bergen Railroad Company to lay a single track in Montgomery street from Hudson street (which is near the ferry) to Newark avenue, and through Newark avenue to the westerly boundary of the city, and through Grove street from Newark avenue to Montgomery street, through Montgomery street to Gregory street, and through Gregory street to York, and through York to its junction with Hudson street, and through Hudson to Montgomery street (which is the beginning near the ferry.) The authority also extended to other streets, but only those stated are involved in the present issues. These provisions are contained in the first section of the ordinance, and the third section imposed the following condition: " The consent to the said company to lay said track in Montgomery street to Newark avenue, in Newark avenue to Grove street, and in Grove, Gregory, and York streets, as *stated in the first section,* is upon condition that the Jersey City and Hoboken Horse Railroad Company shall have the joint use for their cars of any track that shall be laid in said streets by virtue of such consent; and that if any disagreement shall arise between said two companies, as to the expense or manner of laying said tracks, or the use thereof, that such disagreement shall be finally adjudicated and settled by the common council of said city." Other conditions were also imposed; and the ninth section provided that the ordinance should

go into effect as soon as the Jersey City and Bergen Company should, under their signature and seal, agree that they would apply for, at the next session of the legislature, and obtain, if possible, an amendment to their charter, so that in obtaining the consent of the common council to lay their rails, they should be subject to such conditions as said council, by ordinance, may have imposed. In compliance with that section, the Bergen company, December 14th, 1859, executed to the city an agreement that in consideration of the consent to lay rails, by the ordinance passed December 13th, 1859, they would apply for an amendment, by which they would be made subject to the conditions that the common council may have imposed upon them by that ordinance, and that they would, if possible by fair and lawful means, obtain the passage of the same; which agreement was on the day of the approval of the ordinance filed with the city. After that, the Bergen Company obtained a supplement to their charter, (approved March 17th, 1860,) the first section of which makes them subject to city taxes and water rents, according to one of the conditions of the ordinance, and specially provides that the amount of such taxes shall be deducted from the one-half of one per cent., which, in their charter, they were bound to pay the state treasurer in lieu of all other taxes; and then follows the next section in these words : "That the said Jersey City and Bergen Railroad Company in laying, repairing, and maintaining their rails and constructing their roads in the streets of Jersey City, shall be subject to such conditions as the common council of said city, in *the ordinance granting consent* to lay such rails and construct said road, shall have imposed, or shall impose upon said company." Previous to the passage of this supplement, the common council, January 10th, 1860, passed an ordinance (approved by the mayor, January 18th, 1860), by which authority was given to the Jersey City and Hoboken Horse Railroad Company to lay a single track, commencing at the intersection of Newark avenue and Jersey avenue, through Jersey avenue and other streets .

to North Fourth street, and through North Fourth street to Grove; thence north through Grove street to the north-erly boundary of the city; and also from the intersection of Newark avenue and Grove street, north through Grove street to North Fourth street, &c. And in the third section of that ordinance it was provided that the Hoboken Com-pany shall have the joint use of the tracks of the Jersey City and Bergen Campany, so far as may be necessary to run the cars of the Hoboken Company to and from their tracks in Jersey avenue and Grove street to Hudson street, upon their agreement with the Jersey City and Bergen Company, in accordance with section three of their ordinance, passed December 13th, 1859.

These two ordinances show the relation of the companies to the city and the character of consent that had been given when the supplement was passed. Montgomery street and Newark avenue together formed the main route from the ferry, and each company needed its use; the Hoboken Company to get from the ferry to connect with their tracks in Grove street and Bergen avenue, the Bergen Company to get through the city to the westerly boundary; and both in returning to the ferry, needed the route through Grove street from Newark avenue, and thence through the different streets to Montgomery street at Hudson street; and the common council, by the two ordinances, evidently intended to make provision for the accommodation of each company by the one track. Both companies built their tracks upon the strength of those ordinances and supplement of 1860, the tracks in Montgomery street and Newark avenue, and from Newark avenue through Grove and the other streets returning to the ferry, being built at the expense of the Bergen Company. The validity of the injunction depends upon the right of the Hoboken Company to use those tracks between the ferry and Grove street and Jersey avenue, and that depends upon the construction and effect of the ordi-nance of December 13th, 1859, and the supplement of 1860. The legality of the conditions in the ordinance without the

aid of the act, need not be discussed, as the act in effect validated all such conditions as were within its scope, and gave them the force of legislative enactments. Does the act then include the condition of the third section of the Bergen Company's ordinance?

That section says that the consent to lay said track, &c., is upon condition that the Hoboken Company shall have the joint use of any track that shall be *laid* in said streets by virtue of such consent, &c. The supplement says that the Bergen Company in *laying*, repairing, and *maintaining* their rails and constructing their roads, shall be subject to such conditions as the common council, in the ordinance granting consent to *lay* such rails and construct such road, shall have imposed, &c. No verbal analysis of the statute is required to ascertain its application. One great object of the city was to dispense with the necessity of two tracks. Each company was empowered by its charter to construct a road to the ferry with the consent of the city, and the consent to the Bergen Company was upon the express condition that the other company should have the joint use of their tracks, thereby intending that one set of tracks should answer for both. The agreement to apply for an amendment, by which the Bergen Company would be made subject to the conditions imposed by the ordinance granting consent to lay their rails, clearly includes the condition of the third section; the supplement of 1860 is a fulfillment of that agreement, and its terms are sufficiently broad to embrace what the agreement contemplated. It certainly could not be required of us to restrict the full operation of the words, or to adopt any stinted construction, whereby the act may be made less comprehensive than the agreement. I am unwilling to hold that the second section applies only to the material laying and maintaining of the rails, and not to the conditions upon which the laying was authorized. That section embraces the third section of the ordinance, and by reason thereof the same has become as effectually a part of the supplement as if embodied in terms therein.

What, then, is the effect of that legislative provision? It dispensed with the necessity of any consent by the city for any separate track to enable the Hoboken Company to reach the ferry, and subjected the franchises of the Bergen Company to the joint use by the other company of certain tracks to accomplish that purpose. The right of the Bergen Company to lay their rails was burthened with that joint use, and the same, by necessary implication, inured to the benefit of the Hoboken Company, for whom the provision was intended. Here were two corporations, each empowered to construct a road to the ferry, and instead of separate tracks, consent was given to one company to lay down a particular route, upon condition that the other should have the joint use of it on certain terms. Now, with the franchises of one company burthened with that condition, and the other authorized to operate the same kind of a road to the same locality, it must follow, as a necessary construction, that the company for whose benefit the condition was imposed, is entitled to it. This is purely a matter of construction and application of legislative grant or franchise, and is not controlled by the question, whether a third person can claim the benefit of a mere contract to which he was not privy. The Hoboken Company was entitled to the benefit of the third section of the ordinance by force of the supplement, and that is a vested right which the Bergen Company cannot impair, and subject to which the tracks of the Bergen Company were laid. This is not a case of taking private property for public use. The tracks were laid subject to the joint use, and the franchises must be enjoyed accordingly.

The next inquiry is, as to the terms under which the right of the Hoboken Company is to be enjoyed. Is it a right, although vested, that may be exercised entirely at the expense of the Bergen Company? I think not. The ordinance does not expressly say that the Hoboken Company shall be liable to contribute towards the expense of laying the track, or pay for the use if they do not, but the fair meaning is that they shall be liable to bear a part of the

expense of the construction of the tracks and their mainte-
nance, or to compensate in some [way for the use, if the
tracks are laid and maintained at the expense of the Bergen
Company. That conclusion is warranted from the provision,
that if any disagreement shall arise between the two com-
panies as to the expense or manner of laying the tracks, or
the use thereof, such disagreement shall be finally ad-
judicated and settled by the common council. This pre-sup-
poses an agreement by the parties interested concerning the
construction of the tracks, or an equivalent for the use, but
in case they disagree, then the common council must adju-
dicate and settle it. The failure of the companies to agree,
does not defeat the right of use, for that is vested. The
right continues, and the disagreement is to be settled in the
way pointed out by the ordinance. There can be no objec-
tion to such a provision being embodied in an act of incor-
poration, and making it a condition under which a franchise
is to be enjoyed. Such is the case before us, and it does
not depend upon the mere force of agreements between par-
ties to arbitrate. By treating the right as vested, the
public are secure in the continuance of their accommoda-
tion without interruption by disagreements. The com-
panies are to agree, if possible; and if not able, a special
mode of settlement is provided, to which resort must be had
before the aid of the courts is sought. Now in point of
fact the companies did agree that the Hoboken Company
should use the tracks of the other in question, in consider-
ation of the use by the other of the tracks of the Hoboken
Company through Grove street, north of Newark avenue,
in order to make a communication for the Bergen Company
from the Jersey ferry to the Pavonia ferry, via Grove street
and Pavonia avenue, subject to the right to terminate the
same on notice, and in accordance with that arrangement,
each company ran its cars for several years, and up to
March 23d, 1868, when the Bergen Company terminated
the same by notice, they having in August before built a
track in Erie street, (next parallel with Grove,) to Pavonia

avenue, which they used instead of the Grove street route. Upon the termination of that arrangement, a disagreement arose about compensation for the use of the track by the Hoboken Company, but such termination of the agreement did not affect the *right* of joint use, or entitle the Bergen Company to enjoin the use by the other until a new agreement could be made, or the common council should adjudicate the matter. But the companies having disagreed, the council, September 15th, 1868, passed an ordinance requiring the Hoboken Company to pay $300 a year, from the 1st of May previous, for each car run upon the tracks, in monthly payments, from the date of the ordinance, the amount between the 1st of May and that time to be paid immediately, and in default of payment on demand, the Hoboken Company to cease all use of the tracks of the Bergen Company, and the latter company to be released from all conditions and obligations on account of the provisions of the third section of the ordinance, approved December 20th, 1859. Default having been made in the payment, the respondents also claim that by reason of that ordinance the Hoboken Company had no further right to use their tracks. The Hoboken Company attack that ordinance for various reasons, and among them, that the council had no power to forfeit or defeat their right. This necessarily follows, if we regard the right as vested, as there is no authority given to the council to declare that the right shall cease for non-payment of the amount they adjudicate. They may determine what shall be paid, if they choose to settle the matter in that way, but cannot forfeit for non-payment any more than they could issue an execution to collect the money. When the adjudication is properly made, if in the shape of a money compensation, its collection may be enforced in the proper court, but not by any forfeiture of the right to use the tracks. Whether the ordinance of September 15th, 1868, is good or bad, as fixing the amount of compensation to be paid, need not now be asked; for if good, the respondents have a legal remedy for the recovery of the money, and if bad, a proper

adjudication by the council in the absence of an agreement by the parties, is a precedent condition to any recovery, if such adjudication can be had; and whether had or not, any remedy, whether legal or equitable, must be based upon the recognition of the right of joint use as vested. The words "upon their agreement," &c., in the third section of the ordinance of January 18th, 1860, do not qualify or embarrass the right of the Hoboken Company, for as already stated, that right became fixed by the ordinance of December 20th, 1859, validated by the act of 1860. The third section of the January ordinance has no legal efficacy in securing the joint use, and has received no legislative sanction. The true intention of it, however, was only to subject the joint use to just such condition as was contained in the third section of the Bergen Company's ordinance.

The ordinance of January 12th, 1869, passed by the council, fixing the yearly sum of $100 per car instead of $300, is not of any importance in the issues before us. Its validity, therefore, is undetermined.

The question of abandonment raised in the bill, can be disposed of by the remark that the reason why the Hoboken Company ceased to use the tracks for a few months is in dispute, and besides, there is no evidence to conclude that the right of the company has been abandoned.

It remains only to consider what tracks the Hoboken Company are entitled to use. The ordinance of the Bergen Company is the effective one, and that cannot be held to extend beyond Grove street in Newark avenue. The third section designates the first part of the route, in Montgomery street to Newark avenue and in Newark avenue to Grove street; and the other part is designated in Grove, Gregory, and York streets, *as stated in the first section*. There is some difficulty in the phraseology of this latter clause, parts of streets necessary to complete the route to the intersection of Hudson and Montgomery streets, at the ferry, being left out; but regarding the track as continuous, and referring it to the first section, it may well be held as embracing

the description of that section, extending through Grove street from Newark avenue, and thence through the different streets named to Hudson street, and through that to Montgomery street. Such has been the practical construction of the parties, and the respondents make no insistment. to the contrary. The Hoboken ordinance gives the consent. of the city for the joint use of the tracks to and from the Jersey avenue tracks; but after the passage of the Bergen Company's ordinance, limiting the joint use to Grove street,. I do not consider that the council could qualify the consent they had given by compelling a joint use of tracks not already burthened. The supplement of 1860 made the Bergen Company subject only to such conditions as the council *in that company's ordinance* shall have imposed,. or shall impose upon said company. No additional burthen has been imposed since the passage of that act. Between Grove street and Jersey avenue, in Newark avenue, the Hoboken Company show no right to the joint use of the respondents' track; and therefore, to that extent only the injunction should be retained, but in all other respects the order for its allowance should be reversed. The appellants. may be allowed the costs of this appeal.

The decree was reversed by the following vote :

*For reversal*—BEASLEY, C. J., BEDLE, CLEMENT, DALRIMPLE, KENNEDY, OLDEN, SCUDDER, VAIL, VAN SYCKEL,. WALES, WOODHULL.    11.

*For affirmance*—OGDEN.